UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERYL KING and
KEVIN KING,

     Plaintiffs,        Civil Action No. 1:12-15116

   v.            District Judge Thomas L. Ludington
               Magistrate Judge Laurie J. Michelson
TIFFANEY WILLIAMS,

     Defendant.

_____/

**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT [14]**

   Plaintiffs Kevin King, a Michigan Department of Corrections ("MDOC") prisoner, and his wife, Cheryl King, brought this case pursuant to 42 U.S.C. § 1983, alleging that MDOC employee Tiffaney Williams had violated their First Amendment rights by retaliating for their complaints to Williams' supervisor. Presently before the Court is Defendant Williams' Motion to Dismiss. (Dkt. 14, Def.'s Mot. to Dismiss.) For the following reasons, this Court RECOMMENDS that Defendant's Motion be DENIED.

**I. FACTUAL BACKGROUND**

   The following factual allegations are from the Amended Complaint.

   Plaintiff was transferred to the G. Robert Cotton Correctional Facility in March 2012 and has remained incarcerated there since. (Dkt. 12, Am. Compl., ¶ 1.) On July 5, 2012, Cheryl King visited her husband in the prison. (*Id.*) Defendant Williams was supervising the visiting room. (*Id.*) After Cheryl was "forced to wait over 55 minutes" to see her husband, she asked Williams to "contact supervisory staff." (*Id.*) Williams responded by threatening "visitation termination and permanent restriction if supervisory staff were to be contacted." (*Id.*) Kevin King then waved at

Defendant's supervisor, who opened the security door to speak with him. (*Id.*, ¶ 2.) Defendant immediately made "verbal threats of issuing a misconduct and terminating Plaintiff's visit," and, consequently, Plaintiff "was forced to cease his verbal complaint." (*Id.*) Defendant then wrote "several supposed violations" against Plaintiffs, including "speaking with supervisory staff," "having their heads too close together," and "switching seats." (*Id.*, ¶ 3.)

Kevin King submitted a written complaint against Defendant following the incident. (*Id.*, ¶ 4.) Additionally, Cheryl King called Defendant's supervisor and submitted an oral complaint, expressing "fear of further retaliation and threats" from Defendant, especially threats "to terminate visitation and issue a visiting restriction." (*Id.*, ¶ 5.) Cheryl King also emailed several complaints to the supervisory staff. (*Id.*)

Cheryl King visited her husband again the following week, on July 12, 2012. (*Id.*, ¶ 6.) Defendant was not then working the visiting room, but she had instructed the staff member who was working "to seat Plaintiffs across from each other premised on 'warnings' issued by her (Defendant T. Williams), on July 5, 2012." (*Id.*) In other words, the Kings were not permitted to sit next to each other and put their arms around one another. The MDOC Policy Directive on Prisoner Visitation, however, expressly provides that "[d]uring contact visits, physical contact between prisoners and visitors is prohibited except for one kiss and one embrace between a prisoner and each of his/her visitors at the beginning and end of each visit and when a picture is being taken. In addition, a prisoner and his/her visitor are permitted to have their arms around the shoulders of one another and may hold hands." (Dkt. 16, Ex. C, MDOC Policy Directive 05.03.140, at ¶ V.)[1] Cheryl again waved

---

[1]Matters of public record, such as prison regulations, may be considered on a motion to dismiss. *See, e.g.*, *Doe v. SexSearch.com*, 551 F.3d 412, 416 (6th Cir. 2008) ("While our analysis primarily focuses on the complaint, 'matters of public record . . . may be taken into account.'")

down the supervisor and complained about "the campaign of abuse that was transpiring at the hands of Defendant."(*Id.*, ¶ 8.) She then left the visitation early, because she and "[Kevin] King were prevented from spending time together in accordance with MDOC policy." (*Id.*, ¶ 9.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) requires a plaintiff to plead "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim has the requisite facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Furthermore, the plausibility standard is not a "probability requirement," but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Because Rule 12(b)(6) concerns the adequacy of the pleadings, and not the truth of the facts pleaded, the reviewing court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Hunter v. Sec'y of U.S. Army,* 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). Nevertheless, the Court "need not accept as true legal conclusions or unwarranted factual inferences." (*Id.*)

## III. ANALYSIS

Defendant contends both that Plaintiffs have failed to allege sufficiently a claim of First

---

(quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

Amendment retaliation and that Defendant is entitled to qualified immunity as a government employee. The Court finds neither ground persuasive.

### A. First Amendment Retaliation

 Sufficiently pleading a claim of First Amendment retaliation entails establishing three elements: (i) that Plaintiff was engaged in constitutionally protected conduct, (ii) that Defendant acted in a way that would deter an ordinary person from engaging in that conduct, and (iii) that Defendant's adverse action was causally related to Plaintiff's engaging in the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Defendant has challenged the sufficiency of pleading only as to the second element. (Mot. to Dismiss, at 1.) Because the Court finds that it cannot rule on the second element as a matter of law, dismissal would be inappropriate.

For the first element, Plaintiffs argue that their verbal and written complaints to Defendant's supervisor constitute protected conduct. (Am. Compl. ¶ 13.) The Supreme Court "has made it clear that prison inmates retain all First Amendment rights not incompatible with their status as prisoners, 'or with the legitimate penological objectives of the corrections system.'" *Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009) (citing *Pell v. Procunier*, 417 U.S. 817, 832 (1974)). Access to courts, and therefore the filing of grievances, is one such protected right. *See, e.g.*, *Thaddeus-X*, 175 F.3d at 391 (collecting cases); *Herron v. Harrison,* 203 F.3d 410, 415 (6th Cir. 2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf"). While the breadth of this protection is not entirely clear, it has been held that the mere fact of a complaint being expressed orally rather than in writing does not deprive that complaint of its constitutional protection. *See Pearson v. Welborn*, 471 F.3d 732 (7th Cir. 3006) ("we decline to hold that legitimate complaints lose their protected status simply because they are spoken"); *Smith v.*

4

*Woods*, 2006 WL 1133247, at *10 (N.D.N.Y. Apr. 24, 2006) ("the First Amendment protects, not only the filing of written grievances and complaints, but, under some circumstances, the making of oral complaints to corrections officers"). Because Defendant does not contest the issue of protected conduct, the Court assumes the element to be sufficiently pled.

Defendant does, however, contest that preventing Plaintiff and his wife from having physical contact during their visit would deter an ordinary person from engaging in Plaintiffs' protected conduct. Whether action is sufficiently adverse to deter a person of ordinary firmness is generally a question of fact and thus reserved for the jury. *See, e.g.*, *Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002) ("in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law . . . unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury"). Although "certain threats or violations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions." *Thaddeus-X*, 175 F.3d at 398. Here, Defendant's conclusory assertion that her retaliation was "insignificant" is simply inadequate to establish that her conduct was "de minimis." A wide variety of conduct has been found sufficiently adverse to state a claim for First Amendment retaliation. *See, e.g.*, *Pasley v. Conerly*, 345 Fed. App. 981, 985 (6th Cir. 2009) ("Even the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct."); *Thacker v. Campbell*, 165 F.3d 28 (6th Cir. 1998) (finding a two month suspension of visitation privileges sufficient to state a claim); *Brown v. Crowley*, 312 F.3d 782 (6th Cir. 2002) (holding that writing up an inmate for a major misconduct violation was sufficiently adverse though the only harm was the risk of further sanctions as a result); *Hall v.*

*Sutton*, 755 F.2d 786 (11th Cir. 1985) (finding the confiscation of tennis shoes sufficient to state a claim for retaliation). Defendant's threat to restrict visitation, her issuance of false misconduct violations, and her deprivation of contact granted to prisoners and their visitors during contact visits (*see* Dkt. 16, Ex. C, MDOC Policy Directive 05.03.140, at ¶ V) could thus be found sufficient to deter a person of ordinary firmness.

Defendant contends that because Plaintiffs were nevertheless able to visit, they were not deprived of anything consequential. (Mot. to Dismiss, at 1 ("Plaintiffs were permitted to visit and therefore there was no adverse action.").) But the fact that Defendant's actions did not deter Plaintiff from visiting has no bearing on whether Defendant's actions were sufficient to deter Plaintiff's *protected* conduct, the filing of complaints and grievances. In fact, Plaintiff alleges that after Defendant threatened him with visitation restrictions, he "was forced to cease his verbal complaint." (Am. Compl., ¶ 2.) Plaintiffs have therefore alleged that Defendant acted sufficiently adversely to survive a motion to dismiss.

Finally, with respect to the third element of a retaliation claim, Plaintiffs allege that Defendant's adverse action was at least in part the result of Plaintiffs' engaging in protected conduct. Causation here is relatively straightforward. It is clearly alleged that Defendant's first adverse action, threatening termination and permanent restriction of Plaintiffs' visit, was a direct response to Plaintiffs asking Defendant to contact her supervisor, and took place simultaneously with Plaintiffs' protect conduct. (*See* Am. Compl., ¶ 1.) The second adverse action, the issuance of "supposed violations for breaking visiting room rules," was alleged to be a "backdoor means of punishment for Plaintiffs' protected conduct," and occurred immediately after Plaintiff spoke to Defendant's supervisor. (Am. Compl., ¶ 3.) The third adverse action took place the very next week

6

during visitation and was allegedly "premised on 'warnings' issued by [Defendant]" the previous week. (Am. Compl., ¶ 6.) These allegations suffice to allege causation. Plaintiffs have therefore stated a claim for First Amendment retaliation.

## B. Qualified Immunity

Defendant nevertheless contends that, as a government official performing discretionary functions, she is entitled to qualified immunity, or immunity from suit. (*See* Mot. to Dismiss, at 2-4); *see generally Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known."); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("qualified immunity is 'an immunity from suit rather than a mere defense to liability'") (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The defense entails a two-part inquiry: (i) whether a constitutional right was violated, and (ii) whether that right was clearly established. *See Pearson*, 555 U.S. 223. Showing either that a constitutional right was not violated or that the right was not clearly established furnishes Defendant with immunity from suit.

It follows directly from the determination that Plaintiffs state a claim for First Amendment retaliation that the violation of a constitutional right is alleged. Thus, the pertinent inquiry is whether it was clearly established that Defendant's actions violated Plaintiffs' First Amendment rights. Defendant has made no argument that her conduct did not violate a clearly established right. In fact, Defendant says that because Plaintiff has no claim, "Defendants have no need for a qualified immunity defense." (Mot. to Dismiss, at 3.) This argument would suffice if Plaintiff's claim had failed. But Plaintiff's claim does not fail, and the Court finds it to be a straightforward case of

retaliation for a prisoner's raising grievances, which has long been clearly established as violative of a constitutional right.

      To find that a right is clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *See v. City of Elyria*, 502 F.3d 484, 491 (6th Cir. 2007) (quoting *Anderson v. Creighton,* 483 U.S. 635, 639 (1987)). It is well established that retaliation for a prisoner's attempt to assert grievances and/or access the courts is constitutionally impermissible. *See, e.g.*, *Siggers-El v. Barlow*, 412 F.3d 693, 703 (6th Cir. 2005) ("A reasonable officer would certainly know that the right to access the courts is clearly established and that an officer would be liable if he retaliated against a prisoner for pursuing his right to access the court where the prisoner suffered an adverse action.") (citing *Thaddeus-X,* 175 F.3d at 391, 394); *Scott v. Stone*, 254 F. App'x 469, 475 (6th Cir. 2007) ("a prisoner's right to be free from retaliation, in the form of the issuance of a false major misconduct ticket, against the exercise of his First Amendment rights is clearly established for purposes of qualified immunity") (internal quotations omitted); *White v. Trapp*, 93 F. App'x 23, 28 (6th Cir. 2004) ("The law is clearly established that a prison official may not retaliate against inmates for engaging in protected conduct") (citing *Thaddeus-X,* 175 F.3d at 394); *Sims v. Rewerts*, No. 07-12646, 2008 WL 2224132, at *10 (E.D. Mich. May 29, 2008) ("It is clearly established that plaintiff has a First Amendment right to file administrative grievances in prison. It is also clear that plaintiff has a right to be free from retaliation.") (internal citation omitted). Consequently, Plaintiff has alleged the violation of a clearly established, constitutional right such that dismissal based on qualified immunity is not warranted.

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. 14.) be **DENIED**.

## V. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated:  August 7, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 7, 2013.

s/Jane Johnson
Deputy Clerk

9