UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERYL KING and
KEVIN KING,

    Plaintiffs,                                        Case No. 12-cv-15116
                                                     Hon. Matthew F. Leitman

v.

TIFFANEY WILLIAMS,

    Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO RE-OPEN AND COMPEL DISCOVERY (ECF #55)

## INTRODUCTION AND PROCEDURAL HISTORY

On November 19, 2012, Plaintiffs Kevin King and his wife Cheryl King (collectively, the "Kings"), acting *pro se*, filed this civil-rights action against Defendant Tiffaney Williams ("Williams"). (*See* the Complaint, ECF #1.) The Kings filed an Amended Complaint on March 7, 2013, (*See* ECF #12) and a Second Amended Complaint on July 8, 2013. (*See* ECF #21.)

King is an inmate in the custody of the Michigan Department of Corrections (the "MODC"); Williams is a corrections officer employed by the MODC. The Kings allege in their Second Amended Complaint that, on July 12, 2012, in retaliation for earlier complaints the Kings made against Williams, Williams prohibited the Kings from sitting next to each other and embracing each other

1

during a prison visit in which such contact would otherwise be allowed. (*See id.* at ¶¶3-9.)

Discovery closed on January 27, 2014. (*See* Scheduling Order, ECF #30.) Following the close of discovery, Williams moved for summary judgment. (*See* ECF #38.) The Magistrate Judge recommended that Williams' motion be denied (*see* ECF #45) and Williams objected to this recommendation. (*See* ECF #46.) On September 29, 2014, the Court sustained in part, and overruled in part, Williams' objections, and it denied Williams summary judgment on the Kings' retaliation claim. (*See* ECF #47.)

On December 15, 2014, the Kings moved to re-open discovery and they asked the Court to assign them *pro bono* counsel. (*See* ECF #50.) The Court denied their request to re-open discovery without prejudice (*see* ECF #50), and on January 29, 2015, the Court appointed the Kings *pro bono* counsel. (*See* ECF #52.)

Newly-appointed *pro bono* counsel has now filed a motion to re-open and compel discovery. (*See* the "Discovery Motion," ECF #56.) The Court both appreciates *pro bono* counsel agreeing to take on this representation, and his vigorous advocacy for his clients. However, given that this action is well over two-years-old, that substantial discovery (including depositions) has already taken place, and that discovery closed months ago, the Court is not inclined to re-open

2

discovery. The Court also believes that much of the discovery the Kings now request in the Discovery Motion is not relevant or germane to their cause of action against Williams. Therefore, for all of the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** the Kings' Discovery Motion.

## ANALYSIS

The Court has broad discretion under the rules of civil procedure to manage the discovery process and control its docket. *See Marie v. Am. Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014) (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir. 1992)); *see also Emmons v. McLaughlin*, 874 F.2d 351, 356 (6th Cir. 1981) ("It is well established [] that the scope of discovery is within the sound discretion of the trial court").

Here, the Kings ask the Court to re-open and compel discovery on seven discrete topics. (*See* Disc. Mot. at 5-13, Pg. ID 463-471.) The Kings also ask the Court to allow them to take additional depositions, amend their witness list, and potentially amend the Second Amended Complaint. (*See id.* at 13-14, Pg. ID 471-472.) The Court addresses each of these issues separately below.

A. **The Kings' Request for Documents Related to "Other Analogous Complaints" Against Williams**

The Kings' first request is for "all documents relating to any other complaints against [Williams] by inmates or their visitors." (*Id.* at 5-6, Pg. ID 463-464.) Williams responds that the requested documents are not relevant, and that

3

because "[t]here is no central file containing grievances against [Williams]," locating these documents would be substantially burdensome. (*See* Williams' Response, ECF #57 at 4, Pg. ID 505.)

The Court **DENIES** this request. The documents that are the subject of this request are not particularly relevant to the claims before the Court. This case is about whether Williams violated the Kings' rights by wrongfully retaliating against them. Complaints about other unrelated incidents that involve other individuals – which may or may not have any validity – are simply not especially relevant to the Kings' cause of action here. And, in any event, any marginal relevance the documents may have is outweighed by the substantial burden it would place on Williams to locate and produce the requested documents. *See* Fed. Rule Civ. Proc. 26(b)(2)(C)(iii) (allowing Court to limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit").

**B.  The Kings' Request for Documents Related to Williams' Termination**

The Kings' next request "production of all documents relating to [Williams'] recent termination and/or separation from employment with the MDOC." (Disc. Mot. at 6-7, Pg. ID 464-465.) The Kings appear to believe that Williams' termination was due to her falsifying her time records. (*See id.*) The Kings therefore assert these documents are relevant and could be used "for purposes of cross-examination and impeachment." (*Id.*) Williams responds by providing the

4

Court evidence – through the affidavit of Paulsos Asfada, an MDOC Human Resources Officer – that Williams' termination had nothing to do with her interactions with the Kings and instead was due to "issues with time and attendance only." (Asfada Affidavit, ECF #57-3 at ¶3.) In addition, Williams has represented to the Court that the MDOC has re-hired her. (*See* Williams' Resp. at 6-7, Pg. ID 507-508.)

The Court **DENIES** the Kings' request for documents related to Williams' termination. Given the undisputed evidence that "the MDOC did not terminate [] Williams for any misconduct involving prisoners" (Asfada Aff. at ¶3), and the fact that the MDOC has re-hired Williams, the Kings' request is not meaningfully relevant nor is it reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. Rule Civ. Proc. 26(b)(1).

C. **The Kings' Request for Documents Related to Williams' Finances**

The Kings' third request is for documents "relating to [Williams'] net worth, including any financial statements, all bank account statements for the past year, and her federal income tax records for the most recent two years." (Disc. Mot. at 7, Pg. ID 465.) The Kings claim that this evidence is relevant "with respect to the assessment of punitive damages." (*Id.*) Williams does not contest a "reasonable" request for financial records, but insists that allowing Kevin King, an MDOC inmate, to review the financial records of Williams, an MDOC corrections officer,

5

could cause "a potential risk to [Williams'] safety." (Williams' Resp. at 7, Pg. ID 508.) Williams also objects to Cheryl King having access to these records. (*See id.*)

The requested financial records are relevant to Cheryl King's request for punitive damages, and Williams should produce them. However, the Court is sensitive to the confidential nature of these documents and the concerns Williams' has raised. Therefore, the Court **GRANTS** the Kings' request for Williams' bank account statements for the past year and her federal tax returns for the previous two years, subject to the parties negotiating, and submitting to the Court for entry, a stipulated protective order that designates these documents for "attorneys' eyes only."

**D. The Kings' Request for Documents Related to Complaints They Made Regarding Corrections Officer Fields**

The Kings' fourth request is for "production of all documents relating to any complaints, verbal or written, from either of the [Kings] relating to" a second corrections officer, identified as "Correction Officer Fields" ("Fields"). (Disc. Mot. at 9-11, Pg. ID 467-469.) According to the Kings, while "[t]he gravamen of [their] Complaint is that they were retaliated against" by Williams, they now assert that "the retaliation was more pervasive and extended to [] Williams' coworker," Fields. (*Id.* at 9, Pg. ID 467.) The Kings contend that Fields would often "delay"

6

Cheryl King's admission when she came to see Kevin King, "thereby substantially reducing the amount of time" the Kings could spend together. (*Id.*)

Williams responds that because Fields is not a party to this action, and has nothing to do with the alleged retaliation that forms the basis of the Kings' claims against Williams, the requested documents are not relevant. (*See* Williams Resp. at 8-9, Pg. ID 509-510.) Williams further argues that because there is "no practical way to track down complaints against a particular employee," searching for the documents the Kings request would be unduly burdensome. (*See id.*)

The Kings are not entitled to the documents they request related to Fields and the Court therefore **DENIES** this request. As Williams accurately points out, Fields is not a party to this action, nor have the Kings identified any evidence linking Fields to the July 12, 2012, incident that led to this action. The documents the Kings request therefore are not especially relevant and their request is not reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. Rule Civ. Proc. 26(b)(1). Moreover, the Kings' request, after discovery has closed, is too late. While the Kings' counsel was just recently appointed, the Kings have long known about the Fields' alleged wrongdoing, and had a full and fair opportunity to conduct discovery on this issue before discovery closed. Finally, even if the documents had some modest relevance, on balance, the burden it would

impose on Williams and the MDOC to produce the requested documents outweighs any minimal value the documents would have to the Kings.

**E.      The Kings' Request for Documents Related to Their Visitations**

The Kings' fifth request is for documents related to their visits at the Cotton facility where Kevin King is incarcerated. (*See* Disc. Mot. at 11-12, Pg. ID 469-470.) The Kings request "any writings relating to any of [their] visits prior to July 12, 2012." (*Id.*) Williams responds that her "counsel is not aware of any [unproduced] document detailing the [King's] misbehavior in the visiting room." (Williams' Resp. at 9, Pg. ID 12.)

The Court **GRANTS** the Kings' request for all documents in Williams' or the MDOC's possession related to their visits at the Cotton facility prior to July 12, 2012, because any such documents could conceivably be relevant to their claims against Williams. To the extent not already done, Williams shall conduct a reasonable search for and shall produce any such documents discovered in this search. If, following the reasonable search, it is determined that all such documents have already been produced to the Kings in discovery, Williams' counsel shall so certify in writing to the Kings' counsel.

**F.      The Kings' Request for "Authorizing Documents"**

The Kings' sixth request is "for all documents authorizing a guard to seat a visitor across from a prisoner during a visit in the visitor's room, including the

8

sheet of paper that [] Williams testified at deposition was in the visitor room log book." (Disc. Mot. at 12, Pg. ID 470.) The Kings request that Williams "produce any such documents, or confirm that no such document ever existed, or, if Defendant continues to assert that such a document did exist, explain when, why, and how it ceased to exist." (*Id.*) Williams responds that her counsel has requested the document that Williams referenced from the MDOC, but it could not be located. (Williams' Resp. at 9-10, Pg. ID 510-511.)

The Court **GRANTS IN PART** the Kings' request for this document. Williams and the MDOC shall conduct a reasonable search for this document, and, if found, shall produce the document. If the document cannot be found following a reasonable search, Williams' counsel so shall certify in writing to the Kings counsel, and shall include in such certification an explanation of whether the MDOC believes such a document ever existed, and if it did, why it cannot be located.

**G.     The Kings' Request for Documents Related to Cheryl King's Processing**

The Kings next request "all documents relating to any complaints, verbal or written, from either [of the Kings] relating to [Cheryl] King's processing, shake down, or delay prior to a visit with [Kevin] King." (Disc. Mot. at 12, Pg. ID 470.) The Kings explain that "many of these documents may also be responsive to [their] request … for documents relating to complaints against CO Fields." (*Id.*)

9

Williams responds that that the documents related to Fields are not relevant, and that it would be unduly burdensome to produce the requested documents. (Williams' Resp. at 10, Pg. ID 511.)

The Court **GRANTS IN PART AND DENIES IN PART** this request. To the extent that the Kings can identify specific dates that relate to complaints Cheryl King made about treatment by Williams, Williams and the MDOC shall conduct a reasonable search for those documents, and produce any documents discovered from such a search. Williams and the MDOC need not produce any documents related to Fields for all of the reasons stated above.

**H. The Kings' Request to take Additional Depositions and Amend Their Witness List and Complaint**

Finally, the Kings seek leave to take additional depositions – of Fields and others, including a re-deposition of Williams – and amend their witness list to add Fields as a witness. (*See* Disc. Mot. at 13-14, Pg. ID 471-472.) The Kings also seek leave to potentially amend the Second Amended Complaint. (*See id.* at 14, Pg. ID 472.)

The Court again appreciates *pro bono* counsel's advocacy for his clients, but the Court does not believe that the requested additional depositions are reasonably calculated to lead to the discovery of admissible evidence, especially with discovery now closed. As discussed above, the Kings have not sufficiently demonstrated how the alleged actions of Fields are relevant to their claims, which

focus exclusively on Williams, and, more specifically, on the July 12, 2012, incident described in the Second Amended Complaint. Furthermore, the expense and burden of additional depositions outweighs any potential relevance the depositions would have.

For the same reason, the Court does not believe, at this time, that Fields could offer any testimony that is relevant or admissible to this action if added to the Kings witness list, and there are no likewise grounds for the Kings to amend their Complaint for a third time. As described above, long before the Court appointed *pro bono* counsel, the Kings were aware of the Fields' purported misconduct, yet they did not add Fields to their witness list nor seek to depose Fields. It is too late for the Kings to do so now.

Accordingly, the Kings' requests to take additional depositions, amend their witness list, and potentially amend their Complaint are **DENIED**.

## CONCLUSION

For all of the reasons stated above, **IT IS HEREBY ORDERED** that the Kings' Discovery Motion (ECF #55) is **GRANTED IN PART AND DENIED IN PART** as discussed herein.

Dated: May 1, 2015

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

     I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 1, 2015, by electronic means and/or ordinary mail.

                                                   s/Holly A. Monda
                                                 Case Manager
                                                 (313) 234-5113